UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MILDRED A. FOSTER,

                Plaintiff,

      - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1743 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Mildred A. Foster ("Plaintiff" or "Foster") filed this action pursuant to 42 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA, where Plaintiff was awarded roughly $761,112 in past-due benefits. Plaintiff's counsel, Daniel A. Osborn of Osborn Law, P.C. ("Osborn Law"), now moves for $40,050 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Osborn Law's motion is granted in part and denied in part, and Plaintiff's counsel is awarded $34,710.

## BACKGROUND

      After Plaintiff was denied benefits at the agency level, Plaintiff filed this action on March 25, 2019, and subsequently retained Osborn Law. (Dkts. 1, 9.) After Plaintiff filed a motion for judgment on the pleadings, the parties stipulated to remand the case to the SSA. (*See* Dkts. 14, 16; 3/31/2020 Docket Order.) This Court then awarded Plaintiff $5,200 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. 19; 5/11/2020 Docket Order.) On January 26, 2022, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $761,112 in past-due benefits, with 25% ($190,278.10) withheld

as possible fees for her attorney.[1] (Dkt. 20-6.) That letter, however, was not sent to Osborn Law. (*Id.* at ECF[2] 7.) Instead, it was sent to her prior counsel. (*Id.*) Osborn Law did not receive the notice of award letter until July 6, 2022. (Dkt. 20-7, at ECF 2.) By motion filed on July 6, 2022, Osborn Law now seeks $40,050 for work performed before this Court. (Dkts. 20-8, at ECF 1.)

Along with Osborn Law's motion, counsel submitted a fee agreement,[3] demonstrating that Foster retained Osborn Law on a 25% contingency-fee basis (Dkt. 20-2), and itemized time records, indicating that Osborn Law spent a total of 26.7 hours litigating this matter before this Court (Dkt. 20-3, at ECF 4). Osborn Law requests $40,050 for 26.7 hours of work, which would be an effective rate of $1,500 per hour.

## DISCUSSION

**I.  Timeliness**

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period set forth by Rule 54(d) of the Federal Rules of Civil Procedure. *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019). The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $190,278.10. (Dkt. 20-6, at ECF 5.)

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] The Court notes that the fee agreement submitted by Plaintiff's counsel was signed and dated on June 3, 2020 (*see* Dkt. 20-2, at ECF 3), which was one year after Osborn Law first filed an appearance in this action and several months after the action had been remanded to the SSA (*see* Dkts. 9, 16). When directed by the Court to explain the discrepancy, Osborn Law responded that they realized that Plaintiff's fee agreement "was missing" from the firm's files shortly after the parties stipulated to EAJA fees in May 2020. (Dkt. 21.) Thereafter, Osborn Law "contacted Ms. Foster to have her sign another fee agreement, which she did." (*Id.*)

2

after mailing." *Id.* at 87–89 & n.5. Furthermore, because Rule 54(d) allows judges to extend the 14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

Here, Osborn Law received the notice of benefits award on July 6, 2022, and filed the present motion that same day. (Dkts. 20-1, -7.) The motion is thus timely filed.

## II. Reasonableness of the Requested Fee

### A. Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25% of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b). If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) "the character of the representation and the results the representative achieved," (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits,[4] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case "as to be a windfall to the attorney." *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method

---

[4] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (internal quotation marks and citation omitted)).

3

and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," (3) the satisfaction of the claimant, and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–56. Ultimately, a district court may reduce the amount called for in the contingency-fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53 (quoting *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990)).

In addition, if fee awards are made to a claimant's attorney under both the EAJA and Section 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 789 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)).

### B.     Application

Here, Plaintiff retained Osborn Law pursuant to a 25% contingency-fee agreement. (Dkt. 20-2.) There are no allegations of fraud or overreaching with respect to the fee agreement.

4

Although the fee agreement submitted to the Court was signed after Osborn Law's representation of Plaintiff had concluded, the Court attributes this to a clerical error, and finds that Osborn Law was retained to represent Plaintiff prior to and in connection with the motion practice before this Court. *See supra* note 3.

Having found no evidence of fraud or overreaching, the Court tests the agreement for reasonableness. *See Fields*, 24 F.4th at 853. Osborn Law seeks $40,050, which amounts to just over 5% of Plaintiff's past-due benefits. At 26.7 hours of work, that would be an effective hourly rate of $1,500 per hour.[5] To its credit, Osborn Law seeks less than a quarter of the 25% contingency fee of $190,278, to which it is entitled under the retainer agreement with Plaintiff. Nonetheless, for the reasons explained below, the Court finds that amount to be unreasonable in the context of this case.

With respect to the first consideration, "the character of the representation and the results the representative achieved," the Court notes that Osborn Law identified the relevant infirmities with the SSA's decision, prompting the SSA to agree to a remand, and achieved the exact result that Plaintiff hoped for—an award of past-due and future benefits. At the same time, as discussed in more detail below, Osborn Law inexcusably failed to file its moving brief by the (extended) deadline and risked having Plaintiff's case dismissed. (*See* 12/27/2019 Docket Order.) Accordingly, the Court finds that while the results achieved in this matter support Osborn Law's fee request, the firm's failure to timely file Plaintiff's motion demonstrated a lack of diligence and care, and undermined the character of the representation, thereby justifying a downward adjustment.

---

[5] Had Osborn Law sought the full 25% of Plaintiff's past-due benefits, the effective hourly rate would have been approximately $7,126.52 per hour.

With respect to the second consideration, the Court finds that Plaintiff's counsel was responsible for several delays. On April 1, 2019, the Court set a briefing schedule that directed Defendant to file the administrative record by July 1, 2019, followed by a motion for judgment on the pleadings by August 30, 2019, with Plaintiff's response and any cross-motion due by October 29, 2019, and Defendant's reply due by November 19, 2019. (Dkt. 4.) Subsequently, on August 28, 2019, the parties filed a joint request to modify the briefing schedule to allow Plaintiff to file her motion first and to give each side additional time to file their motions. (Dkt. 12.) Under the revised schedule, Plaintiff would have until November 26, 2019 (instead of October 29, 2019) to file her motion for judgment on the pleadings, Defendant would have until January 24, 2020 to file its cross-motion, Plaintiff would have until February 14, 2020 to file her reply, and Defendant would have until March 6, 2020 to file its reply. (*Id.*) Thus, the cumulative effect of the agreed-upon revised schedule was to delay full briefing of Plaintiff's motion by approximately four months. The Court granted the requested modification and extension. (8/29/2019 Docket Order.) Then, on November 21, 2019, Osborn Law requested a 30-day extension, on consent of Defendant, until December 26, 2019, to file its opening brief. (Dkt. 13.) Once again, the Court granted the extension request, but warned that no further extensions would be granted absent extenuating circumstances. (11/21/2019 Docket Order.) Without explanation, however, Osborn Law missed the new deadline. On December 27, 2019, the Court *sua sponte* granted an eleven-day extension for Plaintiff to file her opening motion, warning Osborn Law that failure to comply with the extended deadline could result in dismissal for failure to prosecute, and informing the parties that no further extensions would be granted. (12/27/2019 Docket Order.) There was no excuse for missing the extended deadline in December 2019, and the cumulative effect of the extension was exactly what the Second Circuit warned about in *Fields*: Plaintiff's counsel being eligible for an

6

additional proportion of past-due benefits because of their own delay. *Fields*, 24 F.4th at 849 n.2 ("Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery."). As such, the Court finds that this factor justifies a downward adjustment.

Finally, the Court must determine whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56. First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," the Court believes that 26.7 hours was a reasonable amount of time to expend on this case. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, thereby justifying a *de facto* hourly rate of $1,556.98. *Id.* at 854 (noting that "other lawyers might reasonably have taken twice as much time" to do the same work). Here, Osborn Law spent 26.7 hours reviewing a 967-page transcript (Dkt. 11), drafting a 24-page opening brief (Dkt. 14-1), and obtaining a stipulation of remand (Dkt. 16). The Court finds that Plaintiff's counsel was equally if not more efficient than the plaintiff's counsel in *Fields*, spending nearly the same amount of time on the case "despite not having handled the case at the agency level and being unfamiliar with the administrative record." *Springer v. Comm'r of Soc. Sec.*, No. 19-CV-2032 (RRM), 2023 WL 2711313, at *4 (E.D.N.Y. Mar. 30, 2023); *see also infra* p. 8 and note 6 (noting that Osborn Law did not represent Plaintiff at the agency level). As such, this factor does not justify a downward adjustment.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," the Court notes that, unlike in *Fields*, Osborn Law did not represent Foster in front of the SSA. (*See* Dkt. 20-3, at ECF 4.) In *Fields*,

7

plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council. *Fields*, 24 F.4th at 855. Here, Osborn Law did not begin to represent Plaintiff until after her application for benefits had been denied at the administrative level and she had filed suit challenging the SSA's determination.[6] Consequently, counsel did not have the type of attorney-client relationship built over multiple rounds of representation that distinguished counsel in *Fields* from other windfall cases. Thus, this factor justifies a slight downward adjustment.

Third, with respect to "the satisfaction of the disabled claimant," the Court again notes that Osborn Law achieved the desired result, and there is no evidence in the record to suggest that Foster was dissatisfied with any aspect of Osborn Law's performance. As such, this factor does not justify a downward adjustment.

Fourth, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court observes that this case was not as uncertain as the underlying case in *Fields*, where the SSA denied benefits even after one remand from the district court. *Fields*, 24 F.4th at 850. Here, in contrast, the SSA stipulated to remand after the opening brief, indicating that this case was far less uncertain than the underlying case in *Fields* and did not require the sustained effort of multiple rounds of representation by Osborn Law to achieve a positive result. Given the relative lack of uncertainty regarding Plaintiff's claim, the Court finds that this factor justifies a modest downward adjustment.

---

[6] Plaintiff was *pro se* when she first filed the Complaint (*see* Dkts. 1, 4), and Osborn Law filed an appearance in this action on June 3, 2019 (Dkt. 9).

For the reasons explained above, the Court finds the requested amount to be unreasonable in the circumstances of this case, and reduces the amount to $34,710, which equates to an effective rate of $1,300 per hour. The Court observes that "payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371). An award of $34,710 is reasonable in the circumstances of this case and appropriately reflects the risks inherent with contingency representations. Upon receiving the Section 406(b) award, Osborn Law must remit the $5,200 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Osborn Law is awarded $34,710. Upon receipt of this award from the government, Osborn Law shall promptly refund Plaintiff $5,200, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 16, 2023
      Brooklyn, New York

9